# UNITED STATES DISTRICT COURT

for the

Middle District of Alabama

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A Samsung Galaxy S8 Cellphone, Model SM-G950U,<br>Serial No.: 9889ba344f4c534159 | )<br>)<br>)    Case No.  $2:18mj\ 276-GMB$<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Middle _____ District of _____ Alabama _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 5861(d) | Possession of a Destructive Device |
| 18 U.S.C. § 844(i) | Malicious Use of an Explosive |
| 18 U.S.C. § 924(c) | Possession of a Firearm in Furtherance of a Crime of Violence |

The application is based on these facts:

See attached affidavit incorporated herein by reference and made part of this application.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Stephen Thompson, Bureau of Alcohol,Tobacco Firearms
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **12/11/2018** ~~12/7/2018~~

_____
*Judge's signature*

City and state:  Montgomery, AL

Gray M. Borden, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN THE MATTER OF THE SEARCH OF
A SAMSUNG GALAXY S8 CELLPHONE,
MODEL SM-G950U, SERIAL NO.
9889ba344f4c534159

Case No. 2:18m 276-GmB

## **AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Stephen Thompson, being first duly sworn, hereby depose and state as follows:

### **INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— an electronic device —which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice. I have been employed as a Criminal Investigator / Special Agent for the United States since 2004. I am currently assigned to the ATF Montgomery Field Office, Dothan Satellite Office. As an ATF Special Agent (SA), I am charged with investigating violations of Federal Firearms and Explosives Laws. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## **IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

4.     The property to be searched is a Samsung Galaxy S8 cellphone, model SM-
G950U, serial number 9889ba344f4c534159, hereinafter the "Device." The Device is currently
stored in law enforcement possession at the ATF Montgomery Field Office located at 2 N.
Jackson Street, Suite 404, Montgomery, Alabama 36104.

5.     The applied-for warrant would authorize the forensic examination of the Device
for the purpose of identifying electronically stored data particularly described in Attachment B.

## **PROBABLE CAUSE**

### *OVERVIEW*

6.     Sylvio Joseph KING was indicted by the Middle District of Alabama grand jury
on or about October 31, 2018, in case number 1:18-CR-469-WKW. The indictment has multiple
charges:

- •     26 U.S.C. § 5861(d) – Failure to Register a Firearm/Destructive Device in
  Violation of the National Firearms Act (two counts);

- •     18 U.S.C. § 844(i) – Malicious Use of an Explosive; and

- •     18 U.S.C. § 924(c) – Use of a Firearm in Relation to a Crime of Violence.

7.     This warrant seeks to *re-search* KING's cell phone, the Device. The Device was
previously searched (via only logical extraction) subject to a state search warrant, but *in an
abundance of caution*, the Government is seeking a second search warrant to perform additional
analysis (a physical extraction, which is now believed to be technologically feasible for this type
of phone).

2

## DETAILED FACTS

8.     On October 23, 2017, at approximately 0634 hours, a 911 call was received by the Houston County Sheriff's Office (HCSO) advising that an explosion occurred in a vehicle at or near the intersection of South Park Avenue and Peterman Road located in Houston County, Alabama. The responding units arrived on scene and confirmed the reported explosion. The driver of the vehicle was identified as Terry Daniel Brooks, the victim. Brooks suffered major injuries from the blast and was transported to the Southeast Alabama Medical Center for treatment where he remained for approximately five days.

9.     On October 24, 2017, a state search warrant was executed on the vehicle driven by the victim, Brooks, and the following components were recovered (primarily from the space immediately behind the driver's seat): a canvas carrying bag, galvanized pipe, galvanized end caps, galvanized fittings, an explosive material, shrapnel, ATV or motorcycle type battery, wiring and wiring connectors, electrical tape, duct tape, electrical circuitry, and what is believed to be the remnants of an Estes, Pro Series II, Sonic Ignitor (an electronic ignitor). An ATF explosives expert, Phil Whitley, has subsequently reviewed this evidence and determined that these items were used to create an improvised explosive device (IED) in the form of a remote control bomb.

10.    Investigators discovered that an Estes, Pro Series II, Sonic Ignitor was purchased from Hobby Lobby in Dothan on October 17, 2017 (six days before the explosion). Investigators then obtained video from Hobby Lobby showing a person purchasing the Sonic Ignitor: a white male that appeared to be very consistent with the physical appearance of KING.

11.    On October 26, 2017, a local attorney, T. J. Haywood, contacted investigators advising that Ashley Haydt (the mother of Brooks' child) had information regarding the bombing

3

of Brooks. Investigators immediately responded to Haywood's law office and interviewed Haydt.[1] Haydt stated that she knew KING as a coworker and friend, and that she had information which implicated him with the crime. Specifically, she stated on the morning of October 23, 2017 (the day of the explosion) she received a video chat (via Snapchat) from KING stating, "...boom, I felt that from 120 feet away." Haydt stated she was shocked and responded to the message by stating, "Dang." Haydt further stated that she deleted Snapchat from her phone on Tuesday, October 24, 2017.

12.     Haydt continued by stating that earlier that same day (October 26, 2017) KING spoke to her in person and told her "I done it." Haydt responded by stating, "You did what?" KING told her "I planted that in Danny's truck." [Note: The victim, Terry Daniel Brooks, is also commonly known as Danny.] Haydt stated she was shocked and told KING she had to go and then immediately left. Haydt stated that she went to her attorney who contacted the investigators. Investigators also showed a photograph captured from the Hobby Lobby video to Haydt who confirmed the person depicted in the photograph was KING.

13.     On or about October 26, 2017, HCSO Cpl. Herring and ATF SA Stephen Thompson interviewed KING. After being advised of his *Miranda* rights, KING admitted to manufacturing, possessing, and transporting the destructive device/bomb. KING further admitted to planting the bomb in Brooks' vehicle, and to detonating the bomb utilizing a transmitter/remote control device.

14.     The Device (cell phone) is currently in the lawful possession of the ATF. It came into the ATF's possession in the following way: On October 26, 2017, the Device was taken off

---

[1] Haydt had completed her first interview a few days prior, but it did not produce any new investigative leads.

4

the Defendant's person by law enforcement. On October 30, 2017, HCSO Cpl. Herring obtained and executed a state search warrant for the Device. At the time of the execution of the state search warrant, only a logical exam/extraction of the Device could be obtained, which does not provide deleted data located on the Device.

15.     On or about November 14, 2017, ATF SA Stephen Thompson took custody of the Device from HCSO Cpl. Herring and placed it in the ATF Montgomery Field Office evidence vault. On or about November 7, 2018, after consulting with ATF SA Richie Nieto, and an ATF Digital Media Collection Specialist, the undersigned became aware through the advancement of forensic analysis examination technology, that it now may be possible for a physical exam/extraction of the Device to be conducted, which may provide deleted data located on the Device. Therefore, while the ATF might already have all the necessary authority to re-examine the Device, the affiant seeks this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

16.     The Device is currently in storage at the ATF Montgomery Field Office. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the ATF.

17.     Based on my training and experience, and in consulting with ATF SA John Harrell, who is an ATF Certified Computer Forensic Examiner trained in conducting searches of computer contents and electronic evidence, I know cell phone may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may contain

5

evidence of a crime, and/or (2) the objects may have been used to obtain information and communicate about crimes.

18.     In this case, there is direct evidence that KING communicated with at least one other person about the bombing on his cell phone. Based on the first search of the Device, there is significant evidence to show that KING was using it as his primary cell phone at the time of the crime.

19.     Moreover, based on my training and experience, and in consultation with other ATF Special Agents, I know individuals who make or attempt to make destructive devices, i.e. bombs, frequently research or attempt to research the topic by searching the internet for information about making bombs, read on the Internet about making bombs and download information from the Internet on bombs. Videos and instruction manuals are widely available for downloading and purchase, and these videos and manuals contain step-by-step instruction guides to building and using an improvised explosive device or other homemade destructive devices or bombs.

## TECHNICAL TERMS

20.     Based on my training and experience, I use the following technical terms to convey the following meanings:

> a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless

6

telephones or traditional "land line" telephones. A wireless telephone usually

contains a "call log," which records the telephone number, date, and time of calls

made to and from the phone. In addition to enabling voice communications,

wireless telephones now offer a broad range of capabilities. These capabilities

include, but are not limited to: storing names and phone numbers in electronic

"address books;" sending, receiving, and storing text messages and email; taking,

sending, receiving, and storing still photographs and moving video; storing and

playing back audio files; storing dates, appointments, and other information on

personal calendars; and accessing and downloading information from the Internet.

Wireless telephones may also include global positioning system ("GPS")

technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital

picture files, rather than by using photographic film. Digital cameras use a

variety of fixed and removable storage media to store their recorded images.

Images can usually be retrieved by connecting the camera to a computer or by

connecting the removable storage medium to a separate reader. Removable

storage media include various types of flash memory cards or miniature hard

drives. Most digital cameras also include a screen for viewing the stored images.

This storage media can contain any digital data, including data unrelated to

photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a

handheld digital storage device designed primarily to store and play audio, video,

7

or photographic files. However, a portable media player can also store any digital data, such as word processing documents, even if the device is not designed to access such files. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

8

e. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

21. Based on my training, experience, and research, I know the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, and GPS navigation device capable of accessing the internet utilizing an IP address. I also know through my training, experience, and research the Device is capable of operating the Snapchat mobile application. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

9

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Device. This information can sometimes be recovered with forensics tools.

23.     There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

> a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.
>
> b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

10

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

24.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the

11

storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

26.   *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27.   I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Stephen Thompson
ATF Special Agent

13

Subscribed and sworn to before me on December 11th, 2018

THE HONORABLE GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

14